UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CLARENCE SAMUELS                          CIVIL ACTION NO. 11-cv-0201

VERSUS                                    JUDGE FOOTE

JAMES ARNOLD, ET AL                       MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Clarence Samuels ("Plaintiff") is a self-represented prisoner who filed this action against two prison officials at the David Wade Correctional Center ("DWCC"). Plaintiff alleged in his complaint that, despite a prison policy against smoking in his dormitory, he was subjected to excessive levels of environmental tobacco smoke ("ETS") every night. Plaintiff alleged that his complaints to Colonel James Arnold and multiple grievances that were handled by Deputy Warden Angie Huff brought no relief. Plaintiff asks for an award of compensatory and punitive damages against Arnold and Huff. He concedes that his request for injunctive relief was rendered moot when he was released from prison. Doc. 100.

Before the court is a Motion for Summary Judgment (Doc. 103) filed by Arnold and Huff. Plaintiff responded with a Cross-Motion for Summary Judgment (Doc. 105) that was docketed as an opposition. For the reasons that follow, it is recommended that both motions be denied due to genuine disputes of material facts.

**ETS Exposure and the Eighth Amendment**

The Supreme Court has applied a two-prong test to determine whether exposure to second-hand smoke violates a prisoner's Eighth Amendment right. First, the prisoner must show that he is being exposed to unreasonably high levels of ETS. Helling v. McKinney, 113 S.Ct. 2475, 2482 (1993). In assessing that factor, the court must conduct an inquiry into the seriousness of the potential harm and the likelihood that the smoke will actually cause such harm. Id. The court also has to determine whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. Id. Second, the prisoner must show that prison authorities demonstrated a deliberate indifference to his plight. Id.

**Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct.

2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

The court will consider all of the evidence in the record but must "refrain from making credibility determinations or weighing the evidence." Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007). All reasonable inferences must be drawn in favor of the party opposing the motion. Martin v. Spring Break '83 Productions, L.L.C., 688 F.3d 247 (5th Cir. 2012).

**Analysis**

    **A. DWCC Smoking Policy**

The Louisiana Smoke Free Air Act provides in La. R.S. 40:1300.256(A) that, except as permitted by subsection (B), no person shall (1) smoke in any public building, (2) smoke in any school, or (3) smoke in any public place and in any enclosed area within a place of employment. The statute also provides that an employer shall not knowingly permit smoking in any enclosed area within a place of employment. Subsection (B) provides that nothing in the Act prohibits smoking in any of several listed places. Item numbers 6 and 14 on the list state:

> (6) The outdoor area of places of employment; except that the owner or manager of such business may post signs prohibiting smoking in any such outdoor area, which shall have the effect of making that outdoor area an area in which smoking is prohibited under the provisions of this Part....

>   (14) Any state, local, or private correctional facility prior to August 15, 2009. After August 15, 2009, smoking shall be prohibited in any state, local, or private correctional facility.

Summary judgment practice earlier in the case included evidence that the Department of Corrections ("DOC") enacted a written smoking policy in March 2009, months before the August 15, 2009 prohibition became effective. The policy states that, beginning August 15, 2009, smoking is prohibited inside areas of public buildings and places of employment operated by the DOC, but "each Unit Head is authorized to designate smoking areas outside of these public buildings and places of employment." The policy for DWCC prohibits smoking or even possession of smoking materials by inmates in working cell blocks, segregation, or lockdown areas. Inmates assigned to dormitories may possess smoking materials but may not smoke in the housing unit or on the tier. Plaintiff alleges that these rules are not enforced, and inmates often smoke in prohibited areas. Defendants dispute that claim.

### B. Exposure to Unreasonable Levels of ETS

The first prong of the Heller standard is whether Plaintiff was exposed to unreasonably high levels of ETS. Arnold and Huff testify in affidavits that at no time following the March 2009 revision of the DOC smoking policy were offenders housed in the same housing unit as Plaintiff allowed to smoke in the housing unit. Both deny authorizing smoking anywhere at DWCC contrary to the smoking policy. They add that there were signs

posted throughout Plaintiff's H4 dorm unit that stated smoking was not allowed inside the unit.

Plaintiff earlier submitted summary judgment materials (Doc. 15) that he references in his latest motion. He states in an unsworn declaration[1] that after August 15, 2009, smokers were no longer segregated because of the "pretext" that all inmate housing units had become non-smoking units. He states that the mix of smokers with non-smokers within the same housing unit brought on an increase in ETS due to illicit smoking that, before then, had been negligible. Plaintiff states that the levels of ETS in the unit increased as more smokers moved in, and inmates would "smoke in every part of the housing unit as soon as the dormitory officer left the area." Plaintiff also states that "at least every other night I am awakened by the smoke." Plaintiff also submitted declarations from several other inmates housed in the same unit. They declare that they have personally witnessed inmates smoking in the unit "every day," "three times a day," "often, about five to six times a day," "just about every night," "six or seven times a day," and the like.

Plaintiff states in his declaration that in March 2010 he began to experience shortness of breath during vigorous exercise, began to hear a wheezing sound from his respiratory tract, and developed a very bad cough that would reoccur every night. He was told at sick call that he had bronchitis, from which he had never suffered before. He was given an inhaler, but

---

[1] Declarations made pursuant to 28 U.S.C. § 1746 have been recognized as competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762 n. 1 (5th Cir. 2003).

by March 2011 it was no longer effective.  Plaintiff states that he required emergency medical treatment in May 2011 for chronic upper respiratory infection and inflammation that severely impaired his ability to breath.  He was placed on a medicated vaporizer, given an antibiotic injection and pills, and prescribed an inhaler.

     Defendants argue that, considering the policy against smoking in the dorm, Plaintiff cannot show that he was exposed to unreasonably high levels of ETS from 2009 through 2011.  The evidence discussed above, when viewed in the light most favorable to Plaintiff, indicates that Plaintiff was exposed day and night to unreasonably high levels of ETS.  The court has taken judicial notice of the Surgeon General's 2006 report on the health consequences of involuntary exposure to tobacco smoke.  Doc. 100.  The report states that scientific evidence indicates that there is no risk-free level of exposure to secondhand smoke, so that breathing even a little can be harmful to health.  The report finds that secondhand smoke causes lung cancer, heart disease, and acute respiratory effects including cough, wheezing, and breathlessness.  The report adds that separating smokers from non-smokers, cleaning the air, and ventilating buildings cannot eliminate exposures of non-smokers to secondhand smoke.

     The undersigned finds, accordingly, that Plaintiff has created a genuine dispute of material fact as to whether he was exposed to unreasonably high levels of ETS that could cause serious harm under conditions that society could consider to violate contemporary standards of decency.  Society would consider the risk stemming from the conditions

described by Plaintiff to be so grave as to violate contemporary standards of decency to expose anyone unwillingly to such a risk. See Helling, 113 S.Ct. at 2482.

### C. Deliberate Indifference

Defendants next challenge whether Plaintiff can satisfy the second prong of the Helling standard, it requires a prisoner to show that a defendant demonstrated deliberate indifference to his plight. To act with deliberate indifference, the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference. Farmer v. Brennan, 114 S.Ct. 1970 (1994). Defendants argue that their only involvement was to respond to two administrative grievances Plaintiff filed about ETS exposure. They deny that either of them were assigned to Plaintiff's dormitory, and both deny authorizing smoking at DWCC contrary to policy.

James Arnold testifies that between 2009 and 2011 his duties included reviewing, investigating, and responding to grievances submitted by prisoners. He admits participating and responding to two grievances filed by Plaintiff. In DWCC-2009-1223 Plaintiff complained that smoking was being permitted at the prison despite his interpretation of state law. The grievance stated that it was to exhaust administrative remedies prior to seeking judicial intervention if the prison did not ban smoking. Arnold testifies that the grievance did not indicate that Plaintiff, prior to submitting the grievance, "brought a smoking violation, along with the name of the violator" to the attention of a correctional officer assigned to his housing section. When questioned, neither the day or night officer assigned to make rounds in the section recalled Plaintiff reporting a smoking violation. Arnold

testifies that Plaintiff did not "personally inform [him] of the name of an offender housed in H4 Housing Dormitory Unit who violated the Department's Smoking Policies." Arnold adds that offenders in the unit who did violate the policy were disciplined when caught, as evidenced by discipline reports attached to his affidavit.

The response to grievance in DWCC-09-1233 was prepared by Arnold and signed by Huff as unit head. The response states that the smoking policy is "strictly enforced by staff," and prisoners were put on notice by a bulletin of designated smoking and non-smoking areas. The response concluded that no merit was found in the complaint. Petitioner filed a second step request with the Secretary of the DOC (that was not reviewed by Arnold or Huff) in which he argued that inmates still smoked in the dorms despite the policy. He stated that they smoked in the television area, bed area, and shower/bathroom area, where smoke is so thick at night that Plaintiff had to hold his breath to go inside and use the bathroom. The Secretary denied the request for review.

Plaintiff filed a second grievance, DWCC-2010-0820, in which he complained of sleep deprivation due to the "inherent unenforceability" of the smoking policy that caused him to be awakened every night by the presence of ETS from inmates smoking in the dorm. In connection with this grievance, Arnold again testifies that correctional officers in the unit did not recall Plaintiff "reporting a smoking violation in connection with ARP No. DWCC-2010-0820. The response, prepared by Arnold and signed by Huff, referred to the DOC policy, noted that smoking inside areas of every public building was prohibited, and stated that offenders caught violating the policy were subject to rule violation reports and discipline.

The report concluded that there was "no indication that staff are deliberately indifferent to implementation of this policy nor consciously allow a substandard condition of confinement that would violate the Legislative intent of this policy." Huff testifies that she issued these responses based on the information provided her for review and evaluation.

Plaintiff, on the other hand, states in his declaration that in late August of 2009 he "personally discussed this problem with defendant James Arnold," but Arnold assured him the law would eventually be enforced. According to Plaintiff, Arnold said he did not want to risk inmate backlash by abruptly taking away cigarettes and perhaps creating a black market in tobacco products. Plaintiff does not mention it in his declaration, but another grievance in the record, DWCC-11-0091, includes his claim that from January 1 through January 20, 2011, between 6:00 p.m. and 6:00 a.m., he was exposed to excessively dangerous levels of ETS in the dorm. Plaintiff wrote: "Defendant Arnold cannot evade liability by claiming ignorance of the problem, because I have been complaining to him in person." In DWCC-10-1408 Plaintiff complained that, on December 20, 2010 at 7:30 a.m., he was driven from the TV room by secondhand smoke. He complained that he had already contracted bronchitis from past involuntary exposure to ETS and officials should "obey the law" on smoking in the prison.

Plaintiff has created a genuine dispute as to whether James Arnold was deliberately indifferent. Arnold denies that Plaintiff "brought a smoking violation, along with the name of the violator," to the attention of him or other correctional officers, but Plaintiff has presented evidence that he did complain to Arnold about routine violations of the policy by

numerous inmates. Arnold's specifically worded affidavit, though perhaps unintentionally, leaves plenty of room for him to have received complaints from Plaintiff about smoking in the dorms. Noting a particular violation, along with the name of the violator, is not the only way to bring exposure to ETS to the attention of a correctional officer. In any event, the evidence must be construed in the light most favorable to Plaintiff for purposes of the motion.

The Fifth Circuit has reversed summary judgments granted by district courts in similar cases. See, e.g., Robinson v. Louisiana, 363 Fed. Appx. 307 (5th Cir. 2010) (prisoner had evidence he apprised officer that inmates in the dorm were engaged in massive violations of the no-smoking rule, and the officer took no corrective action; summary judgment reversed); Ware v. Batson, 480 Fed. Appx. 247 (5th Cir. 2010) (prisoner asserted that many inmates and employees smoked in the dorm despite policy; defendants denied a grievance because prisoner did not identify inmates who violated the policy; summary judgment vacated); Murrell v. Chandler, 277 Fed. Appx. 341 (5th Cir. 2008) (inmate either orally or in written grievances informed defendants that no smoking policy was not being enforced and that he was having health problems as a result; summary judgment reversed); and Murrell v. Casterline, 307 Fed. Appx. 778 (5th Cir. 2008) (inmate showed defendants knew he was allergic to ETS and defendants looked the other way when inmates smoked in cells and other areas against policy; summary judgment vacated).

Plaintiff states that he personally discussed the ETS problem with James Arnold, and he presented the complaints about ETS to Arnold in the form of grievances that Arnold and

Huff allegedly investigated. Arnold never squarely denies that he was aware of violations of the smoking policy. Rather, he carefully states that Plaintiff did not bring to his attention a smoking violation, along with the name of the violator. Particularly in light of this narrow testimony from Arnold, Plaintiff has demonstrated a genuine issue with respect to the second prong of Helling.

There is less evidence that Plaintiff brought his problems to the attention of Angie Huff, but summary judgment is also improper with respect to her given the repeated grievances presented to her with claims that the smoking policy was not being enforced. See Murrell, 277 Fed. Appx. at 343-44 (finding fact issue based in part on notification to defendants through written grievances). The record also contains grievances sent to Huff from other inmates who complained about similar widespread violations of the smoking policy and lack of enforcement by prison officials.

**Conclusion**

Genuine issues of material fact preclude summary judgment for either defendants or Plaintiff. Defendants are also not entitled to dismissal based on the qualified immunity defense they assert. The facts taken in the light most favorable to Plaintiff do not permit it. See Murrell, 277 Fed. Appx at 344 (rejecting qualified immunity in a similar setting). It appears that the jury trial, now scheduled for March 24, 2014, will be necessary to resolve this case.

Accordingly,

**IT IS RECOMMENDED** that Arnold and Huff's Motion for Summary Judgment (Doc. 103) and Plaintiff's Cross-Motion for Summary Judgment (Doc. 105) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of January, 2014.

_____
Mark L. Hornsby
U.S. Magistrate Judge